ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY
v. T. E. MORRIS.

No. 12,758.   (70 Pac. 651.)

SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Jurisdiction—Effect of Act of 1895.* By the act of February 27, 1895, the general provisions of the statute then in existence conferring jurisdiction on the supreme court were not repealed, but suspended during the existence of the courts of appeals, and immediately upon the expiration of the courts of appeals such provisions became operative again.

2. RAILROADS—*Shipper's Contract—Notice.* While a common carrier cannot stipulate against its own negligence, it may, for a valuable consideration, contract that, if damage result to the shipper by reason of its negligence, or the negligence of its agents, servants, or employees, such shipper shall give notice of the damage within a reasonable time.

Error from Kingman district court; P. B. GILLETT, judge. Opinion filed October 11, 1902. Affirmed.

*A. A. Hurd*, and *O. J. Wood*, for plaintiff in error.

*C. W. Fairchild*, for defendant in error.

The opinion of the court was delivered by

GREENE, J. : In writing the opinion of the court in this case, we are paying a tribute to the learning of our lately deceased associate, Justice ELLIS. Last April this cause was dismissed by this court in an opinion (not reported) written by him, holding that it had no jurisdiction over this litigation. In that opinion he did not concur. His insistence that the court had made a mistake greatly influenced it in granting a rehearing, and, finally, in overruling its former opinion and adopting the views then entertained by him.

This was an action to recover damages claimed to have been sustained by the plaintiff, resulting from the negligence of the railway company, its agents and servants, in the shipment of two cars of cattle from Kansas City to Spivey, Kan. The cause was tried at the November, 1900, term of the district court of Kingman county. A motion for a new trial was overruled, and on January 26, 1901, final judgment for $250 was rendered for plaintiff. The defendant below prosecutes this proceeding in error.

The defendant in error challenges the jurisdiction of this court on the grounds that his judgment became final on January 26, and that this court did not have jurisdiction at that time to entertain proceedings in error to review a judgment of the district court where the amount in controversy was less than $2000. In the former opinion it was held :

"The law of 1895 creating appellate courts, by grant-

ing to such courts exclusive appellate jurisdiction in ordinary civil actions 'where the amount or value' did not exceed $2000, and by repealing all acts and parts of acts inconsistent therewith, divested the supreme court of jurisdiction in such cases, and after the expiration of the courts of appeals, on the second Monday of January, 1901, the former jurisdiction of the supreme court did not revive and was not restored until the adoption of chapter 278, Laws of 1901, which took effect on March 5, 1901.''

With this view then entertained by the court, the cause was dismissed. Afterward, upon application of the plaintiff in error, a rehearing was granted and a reargument ordered on the following propositions :.

''1. Is the act of March 5, chapter 278, Laws of 1901 (Gen. Stat. 1901, § 5019 ), in expressed terms retroactive ?

''2. If so, does your case fall within the following terms of that act ; that is, does such act create a distinction between judgments rendered prior to January 14, 1901, and those subsequently rendered ?

''3. If so, did the legislature have the power to pass a retrospective act granting the right to prosecute an appeal or proceeding in error from a final judgment, there being no prior law granting the right to prosecute an appeal or proceeding in error from such final judgment to this court ?''

After this argument, the justices were unable to agree that, if it were conceded that the act of 1901 is in expressed terms retroactive, and the present case within the saving clause of the act, the legislature had the power to pass a retrospective statute granting the right to prosecute an appeal or a proceeding in error from a final judgment.

The importance of the question, involving as it did a great number of cases, and the insistence of Justice ELLIS that the court in its former opinion had misconstrued the act of 1895, led the court to a re-

examination of that act, after which it is now of the opinion that its original opinion was not a correct interpretation thereof.   Pertinent to a better understanding of that act, as applied to the question under consideration, are the constitutional and statutory provisions which follow.   Section 3 of article 3 of the constitution provides :

"The supreme court shall have original jurisdiction in proceedings in *quo warranto*, mandamus, and *habeas corpus;* and such appellate jurisdiction as may be provided by law."

Section 1 of chapter 27, General Statutes of 1868 (Gen. Stat. 1901, § 1894), is as follows :

"The supreme court shall be a court of record, and, in addition to the original jurisdiction conferred by the constitution, shall have jurisdiction in all cases of appeal and proceedings in error from the district and other courts in such manner as may be provided by law.   .   .   ."

Section 542 of chapter 80, General Statutes of 1868, reads :

"The supreme court may reverse, vacate or modify a judgment of the district court, for errors appearing on the record.   .   .   ."

The only modification of this general appellate jurisdiction found in the statutes, prior to the passage of chapter 96, Laws of 1895, is chapter 245, Laws of 1889, which provides :

"No appeal or proceeding in error shall be had or taken to the supreme court in any civil action unless the amount or value in controversy, exclusive of costs, shall exceed one hundred dollars ($100), except in cases involving the tax or revenue laws, or the title to real estate, or an action for damages in which slander, libel, malicious prosecution or false imprisonment is declared upon, or the constitution of this state, or the

constitution, laws or treaties of the United States, and when the judge of the district or superior court trying the case involving less than one hundred dollars ($100) shall certify to the supreme court that the case is one belonging to the excepted classes."

It will thus be seen that up to the time of the passage of chapter 96, Laws of 1895, creating the courts of appeals, the supreme court had general appellate jurisdiction in all civil actions, except those enumerated in chapter 245, Laws of 1889. If this court has no jurisdiction to hear and determine the proceedings in error in the present case, it is by reason of the provisions of chapter 96, Laws of 1895, above referred to. Section 1 of this act reads :

"Except as herein otherwise declared, the jurisdiction of the supreme court, and the procedure therein, shall be as is now provided by law."

It becomes important, therefore, to ascertain the exceptions contained in this act.

"Sec. 9. Said courts of appeals, within their respective divisions, shall have original jurisdiction, concurrent with and to the same extent as is now given by law to the supreme court, in *quo warranto*, mandamus, and *habeas corpus*. They shall also have exclusive appellate jurisdiction as now allowed by law in all cases of appeal from convictions for misdemeanor in the district and other courts of record ; also in all proceedings in error, as now allowed by law, taken from orders and decisions of the district and other courts of record, or the judge thereof, except probate courts, in civil actions before final judgment, and from all final orders and judgments of such courts, within their respective divisions, where the amount or value does not exceed two thousand dollars, exclusive of interest and costs. . . . All other cases of appeal and proceedings in error shall be taken as now provided by law."

"Sec. 17. The terms of the judges so elected shall

Railway Co. v. Morris.

commence on the second Monday in January, 1897, and continue for the term of four years and until the second Monday in January, 1901, on which date said court shall expire. . . ."

"SEC. 21. When the courts of appeals shall cease to exist by limitation of law, all cases then pending and undetermined therein shall be certified and delivered by the clerks of said courts to the clerk of the supreme court. . . .

"SEC. 22. All acts and parts of acts inconsistent with this act are hereby repealed."

Transposing the language of section 1, it would read: "The jurisdiction and procedure in the supreme court shall remain as now provided by law, except as herein otherwise declared." The exceptions are declared in section 9, and are: (1) That, instead of the supreme court's having exclusive original jurisdiction in cases of *quo warranto*, mandamus, and *habeas corpus*, it shall have concurrent original jurisdiction with the courts of appeals; (2) that, instead of having exclusive appellate jurisdiction in appeals from convictions for misdemeanors from the district and other courts of record, it is divested entirely of any appellate jurisdiction in such proceedings; (3) that it is divested generally of jurisdiction in all proceedings in error from the district and other courts, except the probate court, in civil actions before final judgment, and from all final orders and judgments of such courts within their respective divisions, where the amount or value in controversy does not exceed $2000, exclusive of interest and costs. The present litigation, by reason of the amount involved, falls within the classes enumerated in the third subdivision of section 9, as above expressed. The jurisdiction of which the supreme court was divested by the act was conferred upon the courts of appeals, and, by the terms of section 17,

it was provided that such courts should expire on the second Monday in January, 1901.

Was it the intention of the legislature permanently to divest the supreme court of appellate jurisdiction in all that class of cases enumerated in the act, or did it only intend that such jurisdiction should be suspended during the existence of the courts on which it was conferred? There are no provisions in this act conferring jurisdiction of these cases on any other court after the expiration of the courts of appeals; therefore, we are of the opinion that the legislature only intended to suspend the operation of the general provisions of the statute during the life of the courts of appeals, and that, upon the expiration of such courts, in the absence of any statute further staying the operation of such provisions, they became at once operative and effective, and the jurisdiction of the supreme court over all classes of litigation enumerated in the act of 1895 immediately thereafter attached and became reinstated, as though no such act had been passed.

It is argued that section 22 repeals all provisions of the statute conferring jurisdiction on the supreme court, and, as that court can only exercise such jurisdiction as is expressly conferred on it by statute, therefore a new act is necessary to restore this lost jurisdiction. There is little force in this argument. The language in section 22 is: "All acts and parts of acts inconsistent with this act are hereby repealed." This is not a general repeal of all former statutes, but only such as might in any way interfere with the operation of the act of which it is a part.

The former judgment rendered herein is overruled, and the motion to dismiss is also overruled.

The cattle in question were shipped under a con-

tract which contained, among others, the following conditions :

"In order that any loss or damage to be claimed by the shipper may be fairly and fully investigated and the fact and nature of such claim or loss preserved beyond dispute and by the best evidence, it is agreed that as a condition precedent to his right to recover any damages for any loss or injury to his said stock during the transportation thereof or at any place or places where the same may be loaded or unloaded for any purpose on the company's road, or previous to loading thereof for shipment, the shipper or his agent in charge of the stock will give notice in writing of his claim therefor to some officer of said company or to the nearest station agent, or if delivered to consignee at a point beyond the company's road, to the nearest station agent of the last carrier making such delivery, before such stock shall have been removed from the place of destination above mentioned, or from the place of delivery of the same to the consignee, and before such stock shall have been slaughtered or intermingled with other stock, and will not move such stock from said station or stock-yards until the expiration of three hours after the giving of such notice ;· and a failure to comply in every respect with the terms of this clause shall be a complete bar to any recovery of any and all such damage. . . ."

The plaintiff removed the cattle from the station at Spivey to his pasture in the country without giving notice of any injury. To avoid this obligation on his part, he alleged in his reply that the injuries for which he sued to recover damages were not discovered by him before removing the cattle from the yards, nor in time to comply with the provisions of the shipping contract. Upon the issues thus joined testimony was offered, both to sustain and to controvert the contention of plaintiff. Testimony was also offered tending to show that the injuries sustained by the cattle were such as would naturally occur in shipping and

were known to plaintiff when they were removed from the yards.

The shipping contract in question, like any other contract, should be construed in the light of surrounding circumstances and with a view to carrying into effect the actual intention of the parties. It cannot be said that the company expected that the shipper would be compelled to notify it within three hours after the arrival of the cattle of any injuries which they had sustained which were not observable; nor can it be assumed that the shipper contemplated, when signing the contract, that he was bound to such unreasonable requirements. The plaintiff was bound by the conditions in the contract, and he could not recover for any injuries sustained by the cattle which were obvious when the cattle were turned over to him, or which a reasonably careful man similarly situated would have observed, until he had fully complied with the conditions of the contract by giving the stipulated notice. Whether the cattle sustained any injury by reason of the negligence of the company, its agents or employees, or whether such injuries, if sustained, were discoverable by the defendant before removing them from the yards at Spivey, were questions of fact which the jury, upon conflicting evidence, found against the plaintiff in error. Such findings will not be examined, nor the evidence weighed by this court, when it appears that every material and essential fact necessary to sustain the findings is supported by some evidence, although it may be weak and conflicting.

The court, among its other instructions, gave the following:

"By special contract, the liability of a common carrier may be limited, but while this is true, it cannot stipulate against its own negligence, and, if it is guilty

of negligence, it is liable therefor notwithstanding the terms of the written contract that may have been entered into. A special contract was entered into in this case concerning the fifty-seven head of cattle claimed to have been shipped by Mr. Morris, and both the plaintiff and defendant are bound by that contract, and the plaintiff under the terms of said contract cannot recover in this action. But if you find from the evidence in the case that the defendant, in the shipment of said cattle, was guilty of negligence, then it cannot protect itself from liability by the terms of the contract, and is liable in this action for such an amount as you find from the evidence the plaintiff has been damaged by the negligence of the railroad company in the transportation of said cattle.''

Complaint is made that this instruction, in effect, was that, if the cattle were injured through the negligence of the railway company, its agents or employees, the plaintiff ought to recover for such injuries regardless of his compliance with the conditions of the shipping contract. If this instruction stood alone, or if it were not made plain by other instructions that the court did not have in mind and did not intend to express to the jury this idea, it would be erroneous; but upon an examination of the other instructions, it is easily discoverable that the court was not stating a rule applicable to the cause on trial, but was trying to formulate and state the general principle that a common carrier cannot stipulate against its own negligence. In connection with the above instruction, the court gave the following :

''The contract of shipment in this case contains the following clause : 'In order that any loss or damage to be claimed by the shipper may be fully and fairly investigated, and the fact and nature of said loss be preserved beyond dispute, and by the best evidence, it is agreed as a condition precedent to his right to recover any damage for a loss or injury to his said stock, during the transportation thereof, the shipper,

or his agent in charge of said stock, will give notice in writing of his claim therefor to some officer of the company, or to the nearest station agent, before said stock shall have been removed from the place of destination above mentioned, or from the place of delivery of the same to the consignee.' In this connection, I say to you that if you find from the evidence in this case that the cattle in question, at the time that they were unloaded, were then injured, or had been injured on the trip from Kansas City to Spivey by the negligence of the railroad company in transporting them, and that the plaintiff Morris had knowledge of such injuries, and having said knowledge he unloaded said cattle and removed the same from the place of destination without giving the notice in writing provided for in the section of the contract above quoted, the removal of the said cattle in violation of the provisions of the said section of the said contract would be a complete bar to his right to recover in this action for any damages which he may have sustained by reason of the negligence of the company, in the shipping of the said cattle, but this would not apply to damages which he may have sustained which he did not know of and were not readily to be seen."

While the contention of plaintiff in error in regard to this proposition is not without force, it appears to us, however, that as the jury in this latter instruction were plainly and distinctly informed that the plaintiff could not recover for any injuries which were easily discoverable, or which were known to him before removing the cattle and within time to give the notice as stipulated in the shipping contract, and, as it appears from the pleadings that the plaintiff in error was not seeking to recover for injuries that were discoverable or which he had discovered prior to removing the cattle or within time to give such notice, it cannot be said that the instruction was prejudicial.

The judgment of the court below is affirmed.

All the Justices concurring, BURCH, J., not sitting.