WALLACE v. LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO.

1. CARRIERS— INJURIES TO STOCK — NEGLIGENCE — QUESTIONS FOR JURY.

In an action against a railroad company by a shipper for damages arising out of defendant's alleged failure to transport and deliver with reasonable dispatch a car load of hogs, and to water them externally while in transit, by reason of which neglect a number of them died, plaintiff's witnesses testified that the car was dry the morning after its arrival, and that, if the hogs had been properly showered the day before, it would have presented a different appearance. There was also evidence that for at least two hours the car was left on a side track after a long journey, when it was possible to deliver

the hogs promptly to a connecting road. *Held,* sufficient to go to the jury on the question of defendant's negligence in the respects alleged.

2. SAME.

It appearing that the delay while the car was in charge of defendant was during the most trying time of day, the jury might infer that defendant was responsible for the injury, rather than a connecting carrier to which the car was delivered.

3. SAME—CONTRACT OF SHIPMENT—CONSTRUCTION.

The bill of lading provided that plaintiff was, "at his own sole risk and expense, to load and take care of and to feed and water said stock whilst being transported, whether delayed in transit or otherwise, and to unload the same, and neither said carrier nor any connecting carrier is to be under any liability or duty with reference thereto, except in the actual transportation of the same." Plaintiff did not accompany the stock, which fact was known to defendant's conductor. The testimony tended to show that an agent accompanying the hogs could do nothing in the way of drenching or showering them; and one of defendant's witnesses testified that it was considered the duty of the persons in charge of a stock train, in hot weather, to see that live hogs were showered when occasion required. The conductor testified that the men in charge of the train operated the appliances for showering, and it further appeared that defendant's superintendent had issued orders to drench all hogs. *Held,* that watering the hogs was a part of the actual duty of transportation, and that, as plaintiff's failure to accompany the car was not the occasion of the neglect of such duty, there was a case for the jury on the question of defendant's negligence.

4. SAME—CLAIM FOR DAMAGES—TIME FOR PRESENTMENT—WAIVER.

The bill of lading further provided that no claim for damages should be made unless filed within five days. Plaintiff's claim was filed one day late, but was returned to him to have the freight bill attached, which was done, whereupon defendant declined to settle, but not on the ground that the claim was filed too late. *Held,* a waiver of the provision as to time.

Error to Hillsdale; Chester, J. Submitted February 18, 1903. (Docket No. 100.) Decided June 30, 1903.

Case by John Wallace against the Lake Shore & Michigan Southern Railway Company for injury to a shipment

of stock.   From a judgment for plaintiff, defendant brings error.   Affirmed.

*Dallas Boudeman*, for appellant.

*B. E. Sheldon* and *C. A. Shepard*, for appellee.

MONTGOMERY, J.   This is an action of negligence; the charge being that defendant, having undertaken to transport a car load of hogs from North Adams to Cleveland, neglected to use reasonable dispatch, and did not deliver them at the stockyards within a reasonable time, and neglected to water the hogs externally while in transit, although the necessity for so doing was known to defendant's agents.   It is charged that from the lack of such watering, and because of such neglect, a portion of the hogs died.

The testimony on the trial tended to show that the car was shipped from North Adams at 6:49 p. m., and that it was attached to a train at Hillsdale which had arrived there at 5:50, and was delayed, waiting for the car in question, and left Hillsdale at 8:30.   The train was late in leaving North Adams, but, of course, as this was before the car was in transit, the plaintiff can make no complaint of this.   After leaving Hillsdale the train went to Bawbeese Lake, and took on ten cars of ice, and arrived at Hudson at 11:10, and left at 11:50, having taken on one car and set out one.   The train next stopped at Adrian, arriving at 12:30 a. m. of the 6th, and left at 1:50, having taken on thirteen cars and left off three.   The train arrived at Air Line Junction at 5:25 a. m., where the car containing plaintiff's hogs was picked up by a through freight, and left at 7:35, arriving at Cleveland at 3:25 p. m., and was set out on the mud track, so called, and taken in charge by the Big Four Road at 5:20; the defendant road having no track running to the stockyards.   The defendant's testimony tended to show that the hogs were showered at Hillsdale, Hudson, Blissfield, Port Clinton, Huron, and Cleveland.   Plaintiff offered testimony of

witnesses who saw the car on the morning of the 7th, to
the effect that the car was dry, and that, if the hogs had
been properly showered on the previous day, the car
would have presented a different appearance.   Plaintiff
also offered testimony tending to show that shipments of
cars from North Adams, made by the train to which this
car was attached, would, in the regular course, reach Cleve-
land at 10 a. m. to 12 m. of the second day.

It is contended by defendant's counsel that the testi-
mony conclusively established that there was no unwar-
rantable delay, and that the hogs were properly watered,
and that there should have been a verdict directed on this
ground.   We think, however, that there was a question
for the jury.   There was room to find that at least for
about two hours on the 6th the car was left on the side
track after a long journey, and when it was possible to
deliver the hogs to the Big Four promptly, and there was
testimony from which it might be inferred that the hogs
were not properly showered on the 6th.   It is contended
that it does not appear whether the damage occurred
while the car was being transported by defendant, or later,
while in charge of the Big Four; but the delay of defend-
ant was during the most trying time of day, and from this
circumstance the jury might have drawn the inference
that defendant was responsible for the injury.

The defendant further contends that the court should
have instructed a verdict for the defendant for the reason
that there was no liability under the contract of shipment
which was made.   This contract is evidenced by the bill
of lading, and contained the following provision:

"That the said shipper is, at his own sole risk and ex-
pense, to load and take care of and to feed and water said
stock whilst being transported, whether delayed in transit
or otherwise, and to unload the same, and neither said
carrier nor any connecting carrier is to be under any
liability or duty with reference thereto, except in the actual
transportation of the same."

The plaintiff, although given transportation for the pur-

pose, did not accompany the stock. The fact became known to the conductor of the freight train on the 6th. The testimony of defendant's witnesses tended to show that an agent accompanying the hogs could do nothing in the way of drenching or showering the hogs. One of these witnesses testified that it was considered the duty of the men in charge of a freight train in hot weather to see that live hogs are showered as occasion requires; "I don't see how the shipper could control the watering tanks." The conductor testified:

"From my experience as a conductor, I suppose it is true that fat hogs are a kind of live stock that you can't do anything for in course of transit, except to shower water over them and keep them cool. It is the men in charge of the train who operate those appliances."

The evidence further showed that orders were issued by the superintendent of the company to drench all hogs. It is difficult to see what plaintiff could have done, had he been with the stock to give notice to defendant's agent to perform this duty. And it may be said that this duty is a part of the actual duty of transportation. In *Heller* v. *Railway Co.*, 109 Mich. 61 (66 N. W. 670, 63 Am. St. Rep. 541), it is said:

"Upon ascertaining that plaintiff had no one in charge of the cattle, it would undoubtedly have been the duty of the defendant to unload and water and feed them, when, from any cause, it was unable to transport and deliver them within the usual time."

In the present case, notwithstanding this contract, there were certain duties which the defendant owed to the plaintiff; and, under the charge of the court, it must have been found by the jury that those duties were neglected. The failure of the shipper to accompany the car was not the occasion of the neglect of these duties, and therefore we think there was a case for the jury on the question of defendant's negligence.

The waybill contained another provision, that no claim for damages should be made unless filed within five days,

and verified by the affidavit of the shipper or his agent. It appears that the claim was filed on the 13th, or one day late; but it also appears by the testimony of Mr. Miller, who acted for the plaintiff, that the claim was returned to him to have the freight bill attached, and that this was done, and the claim again placed with the defendant's agents, who, after examination and further correspondence, declined to make payment, but not upon the ground of the claim having been filed too late. We think this constituted a waiver of the right to insist upon time.

The judgment will be affirmed, with costs.

The other Justices concurred.