E. S. PECK, v. CHICAGO GREAT WESTERN RAILWAY COM-
PANY, Appellant, and WATERLOO, CEDAR FALLS &
NORTHERN RAILWAY COMPANY.

**Railways:** SHIPMENT OF LIVE STOCK: CARE OF SAME: DUTY OF COM-
PANY. A contract for the shipment of hogs providing that they
shall be watered, fed and cared for by the shipper in charge, has
reference to the consumption of food and water while in transit;
it does not impose on him the duty of showering the hogs in hot
weather to reduce their temperature. This duty devolves upon
the company having charge of the train and water supply, and
its negligence with respect thereto cannot be relieved by contract.

**Same:** CARE OF STOCK: NEGLIGENCE: NOTICE. The most that can be
required of the shipper in such cases is to notify the employés
of the company that the hogs are in need of showering because
of excessive heat; but where the employés know the condition of
the weather and that the hogs are suffering from heat the shipper
may rely on them to discharge their duty in that respect without
notice.

**Same:** EVIDENCE. Under the evidence the question of whether the
railway company properly performed the duty of showering the
hogs while in transit was for the jury.

**Same:** LIABILITY OF CONNECTING COMPANY. Where the evidence af-
firmatively shows that no injury occurred to stock in transit while
on the lines of a connecting railway, joined as a defendant in a
suit for negligent care of same, a verdict should be directed in its
favor.

*Appeal from Bremer District Court.*— HON. CLIFFORD P.
SMITH, Judge.

FRIDAY, APRIL 10, 1908.

PLAINTIFF loaded one hundred and fifty-five hogs in
two cars and shipped them from Bremer over the Water-
loo, Cedar Falls & Northern Railway Company, to Waverly,
and from there over the Chicago Great Western Railway to
Chicago. Thirty of the hogs died en route, and in this

action recovery of their value is sought. Verdict was directed for the Waterloo, Cedar Falls & Northern Railway Company and returned by the jury against the Chicago Great Western Railway Company. Judgment was entered accordingly, from which the Chicago Great Western Railway Company and plaintiff appeal; that of the former being first perfected.— *Affirmed.*

*A. G. Briggs, T. P. McNamara,* and *Hagemann & Farwell,* for appellant, Chicago Great Western Railway Company.

*Sager & Sweet,* for appellee.

*Hagemann & Farwell,* for Waterloo, Cedar Falls & Northern Railway Company.

LADD, C. J.— The one hundred and fifty-five hogs were loaded in two cars at Bremer at about ten o'clock a. m. on June 4, 1905, and in ten or fifteen minutes thereafter were

1. RAILWAYS: shipment of live stocks: care of same: duty of company.

"picked up" and hauled by the Waterloo, Cedar Falls & Northern Railway Company to Waverly, arriving there in about fifty minutes. The conductor promised plaintiff to haul the cars to the chute so that plaintiff could water the animals but the train on the Chicago Great Western Railway came in as this was about to be done. The conductor of that train refused to wait long enough to allow the hogs to be watered, and pulled out for Chicago shortly afterwards, taking the cars. These reached their destination at 3 :10 o'clock on the following morning with thirty of the hogs dead. The evidence was such as to indicate that none of them were injured prior to reaching Waverly, and that their loss was occasioned by the failure to reduce their temperature by showering with water sufficiently between that point and Chicago. The plaintiff accompanied the cars, and in the freight contract was a provision that "said

animals are to be loaded, unloaded, watered, fed and cared for by the shipper or his agent in charge, and the shipper assumes all risk of losses or damage to the animals while the same are in the yards waiting shipment, or while unloading from cars for any purpose, and during such periods the carrier shall be liable only for such loss or damage to said animals as is caused by its gross negligence."

Showering is usually done by holding a pipe from an elevated tank with one end flattened, so that the water is thrown through the openings in the cars as they slowly pass, thereby sprinkling and cooling the animals within. Appellant has argued the case on the theory that the duty of watering the hogs by showering is imposed on the shipper by the clause quoted. This is not so. Fairly construed, it means no more than that the shipper shall see that the stock is furnished with such food and water as are required for consumption, and, when required for their proper care, the necessary facilities for doing so being provided, and has no connection with the general treatment of stock of this kind essential to safe transportation. The evidence shows that in shipping swine crowded together as is necessary showering them with water in warm weather is essential to protect them from excessive heat; that the facilities for so doing are entirely within the control of the railway company, and it is done by its employés only; and that a shipper properly could not participate in the work. How frequently this should be done necessarily depends on the condition of the weather and of the hogs, and all that can be exacted from the shipper accompanying his stock is that, in the exercise of that care he has undertaken to bestow, he shall keep the employés advised of the condition of the stock that they may apply water as the necessities of the swine require.

A like provision in a shipping contract was so construed by the Supreme Court of Illinois in *Illinois Central R. Co. v. Adams,* 42 Ill. 488 (92 Am. Dec. 85), where the court, after observing that the phrase " feeding and water-

ing " as used in the contract has reference alone, as we understand the contract, to the ordinary sustenance such animals require in the course of transportation, said: " The proof is clear that it is the custom of the railroad agents to make this application of water, and it is most reasonable and just that it should be their duty, for their employers own the trains, the tanks, and water within them, and have entire and exclusive control of all the movements and stoppage of the trains, with which no shipper can in the slightest degree interfere. Were it not so, who can estimate the derangement to which trains would be subjected, did every shipper control its movements — did he have the power to stop it for any purpose, or to appropriate water at an inconvenient or improper station when there might be but a scanty supply not in excess of the necessities of the boilers ? Good policy and a due regard to the operations of the trains require that this duty of watering live hogs in the manner described in the evidence should devolve upon those who manage the trains, and not upon the shippers of such stock. The contract referred to in the declaration had no reference to this matter, but to their ordinary feeding and watering, which duty properly belonged to the owner." See, also, *Wallace v. Lake Shore & M. S. R. Co.,* 133 Mich. 633 (95 N. W. 750).

Under the contract the hogs were to be cared for by the shipper, but this did not relieve the company from furnishing the necessary facilities, nor from its general duty to

2. SAME: care of stocks: negligence: notice. take all such precautions for safe transportation as reasonable prudence at least dictated. It could not by contract relieve itself from liability for its own negligence. *Hudson v. Railway,* 92 Iowa, 231. Thereunder that degree of care which a person of ordinary caution usually would bestow in a like situation is exacted from the shipper; and, in view of the state of the weather, plaintiff might well be held to the duty of observing the condition of his animals and of advising the

trainmen of such condition, unless aware that they were already informed thereof, and it was the duty of the trainmen upon being so advised, or having knowledge thereof, regardless of how obtained, to give the hogs the attention necessary for their preservation.   The defendant's employés knew the state of the weather quite as well as plaintiff, and that the hogs in the ten or twelve car loads in the train were suffering from heat.   The evidence that plaintiff directed their attention to the condition of his hogs at Waverly is undisputed, and he notified the only person in charge of the train at the time, the engineer at Oelwein, and it is also undisputed that defendant's employés were fully aware of the state of the weather and the heated condition of the hogs in the several cars throughout the trip.   Any further information or demands on the part of plaintiff could not have added to their knowledge of the need of showering or emphasized their duty in the matter.   He was not required to harass and annoy them, but, having called their attention to the condition of his hogs, and the necessity of plenty of water to keep them cool, he had the right to rely upon the discharge by them of their plain duty of showering as their condition required.   This the jury might have found they did not do.   Whether they were adequately treated at Redlyn, fourteen miles east of Waverly, or showered at all at Oelwein, was in dispute, and other places with watering facilities, as Dubuque, were passed, though the employés knew of the heated condition of the hogs.   It was the first excessively warm day of the season, and the jury might well have found that the care ordinarily bestowed on such animals in the heated season during transportation was not given them by the trainmen, and that therein the company was negligent.

II.   The contention that the evidence shows conclusively that plaintiff was guilty of contributory negligence is not supported by the record. He bedded the cars with straw at Bremer, but did not wet it,

3. SAME:
     evidence.

owing to the lack of water in the company's well at that place. He probably could have obtained water from neighboring wells by permission of the owners; but in not doing so, in view of the time of day, and the fact that the hogs were not heated in loading, and his reasonable expectation that facilities for showering them would be available en route, he cannot be said to have been negligent in waiting. Upon reaching Waverly, he allowed the Chicago Great Western Railway Company to take the cars without the hogs being watered, though by waiting for another train this might have been done before proceeding farther. But, according to his testimony, he did not know how soon the next train would arrive, and ought not to be held to have been at fault in allowing the employés who knew the condition of the hogs immediately to move them on. Nor was he guilty of not exercising ordinary care in not notifying the employés on the way what was necessary to do in order to protect the hogs against excessive heat. The evidence shows that they were familiar with the treatment essential for protection of such stock, and were aware of the condition of the weather and of the hogs. Nothing he could have done would have added to the information these employés then had, or have facilitated the performance of their duties. The question of whether he was guilty of contributory negligence was rightly submitted to the jury.

III. The evidence shows affirmatively that the hogs were not injured by any negligence on the part of the Waterloo, Cedar Falls & Northern Railway Company, and for

4. SAME: liability of connecting company.

this reason the court rightly directed a verdict for that company. The case is within the exception of chapter 74, Acts 30th General Assembly.— *Affirmed.*