## St. Louis & S. F. R. Co. v. Copeland.

No. 2216.    Opinion Filed May 12, 1909.

(102 Pac. 104.)

1.  **CARRIERS—Carriage of Live Stock—Exemption from Liability.**
    The carriage of live stock involves different requirements than
    those involved in the carriage of inanimate objects. In view of
    this, it is well settled that the owner and the carrier may, by
    contract, provide that the carrier shall be exempt from all liability
    for injuries occurring to the stock disconnected and apart from
    the conduct and running of the trains, such as injury from load-
    ing and unloading, from overloading, suffocation, heating, and the
    like, or from the weakness, escape or viciousness of the stock.

2.  **SAME—Liability for Negligence.** Such a contract, however, does
    not relieve the carrier from the due performance of its under-
    taking. It must use at least ordinary care and diligence in the
    performance of all its duties, and while its obligations may be
    limited by special contract yet it cannot be exonerated by any
    agreement made in anticipation thereof from liability for the
    gross negligence of itself or its servants.

3.  **NEGLIGENCE—Questions for Jury—Negligence—Contributory
    Negligence.** Negligence and contributory negligence are usually
    questions for the jury. It is only where the facts are such that
    all reasonable men must draw the same conclusion from them
    that the question of negligence is ever considered as one of law
    for the court.

4.  **SAME.** Where from the facts shown by the evidence, although
    undisputed, reasonable men might draw different conclusions re-
    specting the question of negligence or contributory negligence,
    such questions are properly for the jury.

5.  **CARRIERS—Carriage of Live Stock—Written Request to Unload
    —Waiver.** Where a contract for the carriage of live stock pro-
    vides that the carrier shall stop its train at any of its stations
    for water and feed where it has facilities for so doing, whenever
    requested in writing by the owner of said live stock or the at-
    tendant in charge thereof, the refusal of the agents of the carrier
    to unload such live stock on the oral request of the owner,
    basing such refusal upon the ground that the freight thereon
    had not been paid, waived a strict compliance with the clause
    of the contract requiring the request to be made in writing. ,

6.  **CARRIERS—Carriage of Live Stock—Rules Indorsed on Contract.**
    The printed rules and regulations indorsed on the back of a
    contract for the transportation of live stock, under the head of

"Special Notice to Agents," is no part of the contract, and is not binding upon the shipper, in the absence of some evidence of his assent to the terms of such notice.

7.   **CARRIERS—Carriage of Live Stock—Notice of Injury—Time of Service.** A provision in a contract for the carriage of live stock which provides "that, as a condition precedent to a recovery for any damages for delay, loss or injury to live stock covered by this contract, the second party will give notice in writing of the claim therefor to some general officer or the nearest station agent of the first party, or to the agent at destination, or some general officer of the delivering line, before such stock is removed from the point of shipment or from the place of destination, and before such stock is mingled with other stock, such written notification to be served within one day after the delivery of such stock at destination," does not apply when at the time said live stock was unloaded and removed by the owner he did not know of the injury done said live stock, if said injuries were such as could not be ascertained within the time limited by the contract by the exercise of ordinary care

(Syllabus by the Court.)

*Error from District Court, Washita County; M. C. Garber, Judge.*

Action by S. H. Copeland against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Flynn & Ames,* for plaintiff in error.

*T. A. Edwards,* for defendant in error.—Negligence, question for jury: *Wallace v. Lake Shore & M. S. Ry. Co.* (Mich.) 95 N. W. 750; *Ruppel v. Allegheny, etc., Ry. Co.* (Penn. 46 Am. St. Rep. 666; 4 Cyc. 437, note; Hutch. Carriers (3rd Ed.) 419; Wilson's Rev. & Ann. St. § 706.   Waiver of written request to unload cattle: *Soper v. R. R. Co.* (Mich.) 71 N. W. 853; *Cleveland, etc., Ry. Co. v. Heath,* 53 N. E. 198; *Frisco v. Phillips* (Okla.) 87 Pac. 470.   Notices and indorsements on back of contract not binding on shipper: 4 Cyc. 404; *Western Transp. Co. v. Newhall* (Ill.) 76 Am. Dec. 760; *Railroad v. Hale,* 6 Mich. 244; *St. L. & S. F. Ry. Co. v. Tribbey* (Kan. App.) 50 Pac. 458; *Ormsby v. Ry. Co.,* 4 Fed. 710.   On service of notice of claim for damages: *Frisco v. Phillips, supra; Ormsby v. Railway Co., supra;*

*L. & N. Ry. Co. v. Belle,* 13 Ky. 393; *A., T. & S. F. Ry. Co. v. Morris* (Kan.) 70 Pac. 661.

KANE, C. J.   This was an action for damages to certain live stock, commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, in the district court of Washita county. The petition alleged in substance, that on the 10th day of August, 1904, for a valuable consideration, and according to a contract between the parties, partly in writing and partly oral, the plaintiff delivered to the defendant certain live stock to be shipped from the town of Eddy, Oklahoma., to the town of Cordell, Okla.; that said live stock consisted of 4 head of horses and 15 head of cattle, constituting one car load; that it was loaded on the 10th day of August, 1904, at 3 o'clock p. m., and by proper and careful handling should have been delivered at Cordell not later than 6 o'clock a. m. on August 11, 1904, the distance between Eddy and Cordell being about 135 miles; that the defendant did not convey said car with reasonable dispatch, but so negligently and carelessly managed said train that the same was delayed at the town of Enid for a period of 10 hours, and did not reach Cordell until 4 o'clock a. m. on the 12th day of August, 1904; that the plaintiff accompanied said car of live stock as caretaker, and that during all the period said live stock was in the possession of defendant he was not supplied with any facilities for feeding, watering, and unloading the same, except at the town of Enid, where such facilities were provided and the live stock watered; that when said car reached Cordell the plaintiff requested the conductor in charge of said train to set said car on the side track where the same could be unloaded, and the request was refused, and the plaintiff demanded facilities for feeding and watering said stock, which demand was refused by the railway company's agent, and said car was held on the tracks of defendant until 10 o'clock a. m. of the 12th day of August, 1904, when it was set and the live stock unloaded; that during all this time the weather was oppressively hot; that as soon as said car was set out the live stock was unloaded; that at that

time it was not apparent that said live stock was injured other than that they were greatly gaunted, and suffered on account of the long confinement, heat, and lack of feed and water, but that plaintiff did not, and could not, ascertain that the live stock had been overheated during the confinement in said car, and for that reason he was unable to notify defendant of any damage done said live stock while in said car; that upon unloading said cattle from said car the plaintiff gave them prompt and careful attention and care; that on or about the 14th day of August, 1904, it developed that the cattle shipped in said car had, on account of the negligence and carelessness of the defendant and its unwarranted delay in transporting said cattle, and by its failure to provide facilities for feeding, watering, and unloading said cattle during said transportation, and in not setting out said car to be unloaded after it arrived, said cattle had become overheated, and from the effects thereof six cows and one bull died. It was further alleged that, as soon as the injury done said cattle by reason of said overheating could be ascertained, said plaintiff gave notice thereof to the agent of the railway company, and subsequently filed a written claim for damages, which was rejected; that said live stock were of the value of $695, for which plaintiff prayed judgment.

The defendant by way of answer set up, first, a general denial; second, an admission that the shipment referred to was received and carried according to the terms of the written contract referred to in plaintiff's petition, but denied that any oral agreement or understanding in addition to said written contract was made by or in its behalf, and further alleged that by the terms of said written contract it was specifically provided that no agent of the defendant had authority to make any other agreement in addition to that contained in said written contract. That the plaintiff in error in all respects complied with said written contract, and transported said live stock with reasonable diligence and due care, and that the injuries sustained by said cattle were due to and caused by, negligence of the plaintiff or his agents. That by the terms of said written contract

the plaintiff agreed (1) to unload, feed, water, and care for said live stock while in transit; (2) to release the defendant from any loss sustained in consequence of any delay, except the amount, if anything, actually expended by him in the price of feed and water for said live stock; (3) that the defendant should not be held liable for any damage to said live stock and cattle through heat or suffocation, whether caused by overloading in said car or not; (4) that said live stock were not to be transported within any specified time, nor delivered at any particular hour; (5) that the defendant should stop its car at any of its stations for water and feed where it had facilities for so doing whenever requested in writing so to do by the owner of said live stock or the attendant in charge thereof; (6) that plaintiff should not confine said live stock in the car for a longer period than 28 consecutive hours without rest for feed and water for at least 5 consecutive hours. That plaintiff did not request the defendant in writing to unload said live stock for feed, rest, and water as provided. in said contract. That said live stock were unloaded, fed, and watered at Enid, and that said live stock were not confined in said car for a period to exceed 28 hours as provided in said contract. That plaintiff by said contract, in consideration of the reduced freight rate at which said live stock were carried, agreed to, and did, release plaintiff in error from any and all liability for or on account of delay in the shipping of said live stock after delivery thereof to plaintiff in error, and from any delay in receiving the same after tender of delivery, and said plaintiff by said written contract waived any and all damages that had theretofore been incurred by any written or verbal contract prior to the execution of the contract attached to his petition. The defendant further alleged, in substance, that by the terms of said contract, in consideration of the reduced freight rate by which the same were transported, it was specifically agreed that in case of damage to said live stock, the same was to be in value not to exceed $50 for each bull, and $30 for each cow included in said shipment, and by the terms of said contract plaintiff was estopped to claim dam-.

ages for loss for any of said cattle in excess of said amount. That it is specifically provided in paragraph 11 of said written contract that as a condition precedent to the recovery of any damage for delay, loss, or sickness to said live stock, the plaintiff must give notice in writing of the claim thereof to some general officer or the nearest station agent of the defendant, or to the agent at destination, and before said live stock is mixed with other live stock; that no such notice was given, or attempted to be given by plaintiff, and that they had no knowledge of any damage to said live stock, or that any claim would be made.

For reply the plaintiff filed a general denial. Upon the issues thus joined the cause was tried before a jury, which returned a verdict in favor of plaintiff in the sum of $645, upon which judgment was duly entered. At the time of filing the general verdict the jury also returned certain answers to special interrogatories, which will be further noticed hereafter. A motion for a new trial was overruled, and the defendant brought the case to this court by petition in error.

Counsel for plaintiff in error assign various grounds of error, but confine their argument to four, and two of these they argue together. The assignments presented by their brief are as follows: First, the trial court erred in overruling defendant's motion for judgment on the special findings, notwithstanding the general verdict; second, the trial court erred in overruling and refusing defendant's motion requesting a peremptory instruction directing the verdict for the defendant; third, the trial court erred in permitting the jury to return a verdict for an amount greater than that shown by the valuation clause noted on the contract between the parties; fourth, there was nothing in the case in the trial court to exempt the defendant in error from complying with the eleventh paragraph of the contract of shipment.

On the first proposition counsel contend that the carriage of animals evidently involves different requirements than those involved in the carriage of inanimate objects. They must be loaded and unloaded with more care; they must be fed, watered, and

protected; they must be secured from escape; they must be guarded against heating, crowding, and suffocation; they must often require skilled attention and assistance. For these and like reasons the owner and the carrier both may desire that the owner, or some experienced person in his behalf, shall accompany the stock and assume its care, leaving to the carrier only the duty of transportation with its necessary incidents. · In view of these facts it is well settled that the owner and the carrier may, by contract, provide that the carrier shall be exempt from all liability for injuries occurring to the stock disconnected and apart from the conduct and running of the trains, such as injury from loading and unloading, from overloading, and suffocation, heating, and the like, or from the weakness, escape, or viciousness of the stock. Such a contract does not relieve the carrier from the due performance of his undertaking; nor can he, according to the weight of authority, by such a contract escape responsibility for the negligence of himself or his servants. The consideration for such contracts is usually found in the reduced rates given and the free transportation of the shipper or his agent to and from the destination of the stock. Hutchinson on Carriers (3d Ed.) § 419.

Counsel for defendant in error concedes that the foregoing excerpts from Mr. Hutchinson's work on Carriers states the rule correctly, but contends that such a contract does not relieve the carrier from the due performance of his undertaking, nor can he escape responsibility for the negligence of himself or his servants. That the Legislature of Oklahoma recognizes the vicious effect of this class of contracts permitting common carriers to contract in such a manner as to relieve them from their ordinary liability as common carriers is shown by its enacting and making a part of the statute law of the state a provision which, under certain circumstances, makes such contracts null and void. The section of the statute referred to is section 706, Wilson's Rev. & Ann. St. 1903, which reads as follows:

"A carrier cannot be exonerated by any agreement made in

anticipation thereof, from liability for the gross negligence, fraud or wilful wrong, of himself or his servants."

He argues that under this theory of the case there are only two question for the court to answer: (1) Does the evidence show such gross negligence and disregard of duty on the part of the plaintiff in error or its servants as to have warranted the trial court in submitting the case to the jury? (2) Is defendant in error precluded by the contract from recovery, on account of negligence on his part, through failure to have literally complied with all the provisions of the contract as to the giving of notice, making demand for the feeding, watering, and unloading of the cattle, the payment of freight, and the filing of his claim for damages? It' was upon the theory above outlined that the case was tried below, the court also submitting to the jury an instruction in relation to the notice clause of the contract which will be adverted to hereafter.

The instruction of the court upon the first proposition was as follows:

"You are instructed that a carrier of property for reward must use at least ordinary care and diligence in the performance of all its duties, and while its obligations may be limited by special contract, yet it cannot be exonerated by any agreement made in anticipation thereof from liability for the gross negligence of itself or its servants; and, if you find from the evidence that the injury to the cattle of plaintiff, Copeland, was caused by the gross negligence of the servants or employes of defendant, you should, notwithstanding the special contract, find for the plaintiff, unless you should also find that the injury to said cattle was contributed to by the negligence of plaintiff, Copeland, or his agents."

This instruction, to our mind, states the law correctly; and if there is any evidence in the record reasonably tending to establish gross negligence on the part of the carrier, the verdict of the jury on that point is conclusive in this court. Negligence and contributory negligence are usually questions for the jury. It is only · where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.

The answers of the jury to certain special interrogatories disclose: That the cattle were loaded at Eddy on the 10th day of August, 1904, and were unloaded at Cordell at 10 o'clock a. m. on the 12th day of August 1904; that two days after they were removed from the car, one bull, valued at $250, three cows, valued at $75 each, and three cows valued at $50 each died from overheating; that the cattle were in charge of S. H. Copeland and one Hammett during transit; that the plaintiff did not notify the defendant of any damage before removing the cattle from its possession; that the owner of the cattle tendered the agent of the railway company at Eddy the money to prepay the freight thereon, and that the agent refused to accept such payment; that the car containing the cattle was delayed at Enid about 10 hours; that the plaintiff requested the railway company to set out the car at Enid so that the cattle might be unloaded, but that the agent of the railway company refused to do so, upon the ground that he was going to send it forward at once; that said car did not go forward on the next train south for Cordell, but remained at Enid for something like 10 hours; that the first train out of Enid before this live stock went forward did not go to Cordell, but stopped at Bessie, seven miles north of Cordell, where there were facilities for unloading cattle; that the car containing these cattle did not arrive at Cordell until about 4 o'clock the next morning, and when it did reach there the railway company had no agent on duty to receive payment of freight, and the plaintiff orally requested the conductor to set the car out so that the stock might be unloaded immediately on arrival at Cordell, and the conductor refused to do so, giving as the reason of his refusal that the freight had not been paid; that the plaintiff offered to pay the freight to the conductor, but he would not receive it, saying that he had no authority to receive it, and had no orders to spot the car; that the cattle were confined in this car at Cordell until between 9 and 10 o'clock in the forenoon, a period of five or six hours after arrival, before the car was set out for the purpose of unloading.

We think this evidence was sufficient to go to the jury on the question of gross negligence.

In *Wallace v. Lake shore & Michigan Southern Railway Company,* 133 Mich. 633, 95 N. W. 750, it is held that:

"There was also evidence that for at least two hours the car was left on a side track after a long journey, when it was possible to deliver the hogs promptly to a connecting road. Held sufficient to go to the jury on the question of defendant's negligence in the respects alleged."

In *Ruppel v. Allegheny Valley Railway Company,* 157 Pa. 166, 31 Atl. 478, 46 Am. St. Rep. 666, the court, in discussing this proposition, says:

"This written contract only expresses what the law implies on the part of the common carrier; namely, that goods which it accepts shall be transported with reasonable dispatch towards destination. Whether the contract has been kept is a question of fact. If there be contradictory evidence, or if the facts warrant opposite inferences, the case must go to the jury."

It is not seriously contended by counsel for defendant that there was not sufficient evidence to warrant the jury in finding that the carrier was guilty of gross negligence, but it is insisted that by the terms of the contract it could not, in any event, be held liable for any damage or injury sustained by the live stock from heat or suffocation, whether caused by defendant's gross negligence or not. The cases cited by counsel, however, do not to our mind sustain this contention. In one of them (*Squire v. N. Y. C. R. R. Co.,* 98 Mass. 239, 93 Am. Dec. 162) Mr. Justice Gray, speaking for the court, says:

"The law is now well settled that, in the absence of any statute upon the subject, common carriers may by special contract limit their liability, at least against all risks but their own negligence or misconduct."

To the same effect is Hutchinson on Carriers, also quoted by counsel for defendant. By reference to section 419, *supra,* this language will be found:

"Such a contract does not relieve the carrier from the due performance of his undertaking; nor can he, according to the

weight of authority, by such contract escape responsibility for the negligence of himself or his servants."

The above quotations from the opinion of Mr. Justice Gray and Mr. Hutchinson's work on Carriers negative the idea that the carrier by such a contract could absolve itself from the payment of damages occasioned by its gross negligence. We believe that the words, "from heat or suffocation whether caused by overloading the cars or otherwise," as used in the contract in the case at bar, did not exempt the carrier from responding in damages for injury to live stock from heat or suffocation, occasioned by its gross negligence or that of its servants, or employes. This construction is in harmony with the weight of authority, and also gives effect to section 706, Wilson's Rev. & Ann. St. 1903.

It is further urged by counsel for the plaintiff in error that another reason the motion for judgment on the special findings should have been sustained is found in the jury's answer to special interrogatory No. 12, submitted by the plaintiff in the court below. This finding was that plaintiff did not request defendant's agent, or any of them, in writing to feed or water said cattle while in transit. The evidence and special findings of the jury show that the stock was watered at Enid, and that between Enid and Cordell it was not unloaded or watered, and that the plaintiff did not request the carrier in writing to stop and unload for that purpose. This evidence was admissible as tending to show contributory negligence on the part of the plaintiff. The question of contributory negligence, however, was submitted to the jury under proper instructions, and we are not prepared to say that the foregoing facts although uncontradicted, constitute negligence *per se* which would warrant the court in taking the case from the jury.

"Where from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence or contributory negligence, such question are properly for the jury." (*Sans Bois Coal Co. v. Janeway*, 99 Pac. 153, 22 Okla. 425.)

The evidence shows conclusively that the plaintiff did orally request the carrier to unload the stock immediately upon its ar-

rival at Cordell, and that the conductor in charge of the train refused to do so, not for the reason that the request was not in writing, but for the reason that the freight had not been paid; that immediately after putting the car of stock upon the side track at Cordell the freight train that carried it there left for its way south, and after that there was no agent of the company present upon whom the plaintiff could make request in writing, or any other way, to have the stock unloaded and watered. The refusal of the agents of the railway company to unload the stock at Cordell, being based upon the fact that the freight had not been paid, waived the stipulation in the contract requiring the request to be made in writing. There is no doubt from the evidence that the request to unload would not have been complied with, even if it had been made in writing, as the conductor said he could not unload it because the freight had not been paid, and he had no authoity to receive the money to pay the freight.

In *Wallace v. Lake Shore & Michigan Southern Railway Company, supra,* it appeared that the waybill contained a provision that no claim for damages should be made unless filed within five days, and verified by the affidavit of the shipper or his agent. The claim for damages was filed one day late. After examination and further correspondence, the railway company declined to make payment, but not upon the ground of the claim having been filed too late. The court held:

"We think this constituted a waiver of the right to insist upon time."

In *Cleveland, Cincinnati, Chicago & St. Louis Railroad Company v. Heath,* 22 Ind. App. 47, 53 N. E. 198, the rule is stated thus:

"Where the general claim agent of a common carrier receives an unverified claim for damages to live stock, without objection to such claim for lack of verification, and such agent states at the time that he will not consider the claim unless the original contract is produced, and certain proofs of loss furnished, the receipt of the claim and the statement of the agent amount to a waiver of

the provision in the contract for shipment that any claim for damages thereunder must be verified."

In *Soper v. Railroad Company,* 113 Mich. 443, 71 N. W. 853, the court says:

"The only point open to discussion under the exceptions and assignments of error is whether the trial court erred in its disposition of the question of waiver. It is the claim of the defendant that, because of the conditions attached to the bill of lading, the plaintiff was bound to serve upon the defendant a verified statement of his claim within five days after the removal of the stock from the cars, and that, as he did not do this, he could not recover. The plaintiff claimed that this condition was waived by the letters, acts, and conduct of the defendant. * * * It will be noticed that Mr. Sanford does not seek to resist the claim upon the ground that a verified statement of the claim was not furnished. in time, and there is nothing in the record to show that this. defense was ever interposed until the time of the trial. * * * It is not at all certain, in view of the statements contained in these letters, that the trial judge would not have been justified in instructing the jury as a matter of law that the defendant had waived its right to insist upon a verified statement of the claim. * * * The question, however, was submitted to the jury, and we do not think there is any ground for complaint upon the part of the defendant."

There does not seem to be any evidence in the record to sustain the third assignment of error. The part of the contract whereby it is claimed that the carrier limited its liability appears in the record as follows:

"To the St. Louis & San Francisco Railroad Company: The undersigned offers for shipment over your road 15 head of cattle, 4 horses, from Eddy to Cordell, each head of the estimated weight of ——— pounds, and valued at ——— dollars per ——— and ——— head of ——— from ——— to ———, each head of the estimated weight of ——— pounds, and valued at ——— dollars per ——— which valuation is named by me for the purpose of securing a reduced rate of freight on this shipment; and I agree that in case of loss or damage to same said valuation so named shall be conclusive, should I make any claim for such loss or damage against any carrier over whose line the same may pass. This

application is an election on my part to avail myself of a reduced rate, by making this shipment under the following contract, limiting the liability of such carrier, instead of shipping the same at a higher rate without such limitation. Witness: —————— S. H. Copeland, Owner or Shipper."

After the foregoing, and attached thereto, follows what is designated, "Original Live Stock Contract." The tenth paragraph of this contract reads as follows:

"It is further agreed that neither the company nor any carrier over whose lines this stock may be transported, shall be liable for any injury to said stock in any amount above the actual damages thereto, nor in any amount in excess of the value thereof as stated in the application of the shipper, which is hereto attached and made a part hereof, and in case of total loss of said stock or any portion thereof and claim therefor is made by the shipper against the company or any connecting line wherein the value of said stock may be material the valuation named in said application shall be conclusive upon all parties hereto."

The "Original Live Stock Contract" is not signed by either of the parties. The sixteenth paragraph thereof provides:

"The evidence that the party of the second part, after full consideration hereof, assents to all the conditions of the foregoing contract is his signature hereto."

There is an indorsement on the back of this contract, under the heading "Valuation Clause, Special Notice to Agents," as follows:

"Ratings given herein are based upon declared valuation by shippers not exceeding the following: Each horse or pony (gelding, mare, or stallion), mule or jack, $100.00; each ox or bull, $50.00; each cow, $30.00; each calf, $10.00; each hog, $10.00; each sheep or goat, $3.00. Animals valued at more than as herein above specified will be received or transported only under other special contract. Agent will, in all instances see that shipper's valuations are filled in blank space left for that purpose in application attached to the contract, and that such application, as well as the contract, is signed by the shipper or his authorized agent."

Two important directions to agents were evidently omitted in preparing the contract in this case: (1) The blank spaces left

for shipper's valuations were not filled in; and (2) the "Original Live Stock Contract" was not signed by the shipper or his authorized agent. We believe these omissions were fatal to the right of the carrier to insist upon that part of the contract. It was specifically stated in the tenth paragraph of the contract that in case of loss the valuations named in said application shall be conclusive upon all parties. As there were no valuations named, it is difficult to determine by what process of reasoning the valuation clause may now be held binding. It cannot successfully be maintained that the indorsement on the back of the contract entitled "Special Notice to Agents," which fixes a maximum valuation on certain classes of live stock, is binding upon the shipper. This indorsement cannot be regarded even as notice to the shipper of the limitation as to value, and there is no evidence in the record showing that the same was brought to his attention, and that he assented and agreed thereto.

In *Western Transportation Company v. Newhall*, 24 Ill. 466, 76 Am. Dec. 760, it was contended in behalf of the transportation company that the qualifications and conditions appearing on the back of a receipt were a part of the contract, no matter on what part of the paper they were printed. In discussing this proposition Mr. Justice Breese, who delivered the opinion of the court, says:

"The important question in this case is raised by the second point made by the defendants that the conditions and exceptions on the back of the bill of lading, being parts of the contract, must go to qualify and affect the liability of the defendants, and they, therefore, should have been noticed in the declaration; and the omission to do so constituted a fatal variance between the contract described in the declaration and the contract proved in evidence. The conditions and exceptions here spoken of are contained in a certain clause printed on the backs of the bill of lading or receipt for the powder, under the head of 'Conditions and Rules.' It is as follows: 'The companies will not hold themselves liable at all for injuries to any articles of freight during the course of transportation, occasioned by the weather, or accidental delays, or natural tendency to decay.' The objection made by the

defendants to the omission of this clause from the declaration brings up the questions, Was it a part of the contract? Can a common carrier limit his common-law liability by a notice of this kind, even if brought home to the knowledge of the owner, or only by a special contract with the owner of the goods? We believe the rule to be now well settled that the common-law liability of a common carrier cannot be so restricted for, notwithstanding the notice, the owner has a right to insist that the carrier shall receive and carry the goods subject to all the incidents of his employment; and there can be no presumption, when they are delivered and received by the carrier, that the owner intended to abandon any of his legal rights, or yield to the wishes of the carrier."

In *Railroad Company v. Hale,* 6 Mich. 243, a case in which the limitation of the liability of the company was indorsed on the back of the receipt or bill of lading, the court says:

"Something more than mere notice indorsed upon a receipt, or otherwise brought to the consignor's knowledge, is necessary to relieve the carrier from his common-law liability. His assent to the limitation is still necessary; and this is a question of fact for the jury, to be determined by evidence *aliunde,* and is not the subject of presumption from the terms of the receipt alone."

The third paragraph of the syllabus in the foregoing case reads as follows:

"A common carrier cannot limit his common-law liability by a mere notice indorsed upon the receipt given the consignor, or otherwise brought to the consignor's notice. The assent of the latter to the limitation is necessary, and must be proved by evidence *aliunde*—it cannot be presumed from the terms of the receipt alone, or be implied from the posting of notices or the delivery thereof to the consignor."

In *St. L. & S. F. Ry. Co. v. Tribbey,* 6 Kan. App. 467, 50 Pac. 458, a case very similar to the one at bar, it was held that the printed rules and regulations indorsed on the back of a contract for the transportation of live stock, under the head of "Notice to Agents," was not binding upon the shipper. Mr. Justice Schoonover, in discussing this proposition, says:

"It is not only against the policy of the law, but a serious injury to commerce, to allow the carrier to say that the shipper of

merchandise assents to the terms proposed in a notice, whether it be general to the public or special to a particular person, merely because he does not expressly dissent from them. If the parties were on an equality in their dealings with each other, there might be some show of reason for assuming acquiescence from silence, but in the nature of the case this equality does not exist, and therefore every intendment should be made in favor of the shipper when he takes a receipt for his property, with restrictive conditions annexed, and says nothing, that he intends to rely upon the law for the security of his rights. It can readily be seen, if the carrier can reduce his liability in the way proposed, he can transact business on any terms he chooses to prescribe."

We believe the foregoing cases are in point on the question now under consideration, and are decisive thereof.

Counsel for defendant contends that there is nothing in the case at bar exempting defendant in error from complying with the eleventh paragraph of the live stock contract, which provides in part:

"That, as a condition precedent to a recovery for any damages for delay, loss or injury to live stock covered by this contract, the second party will give notice in writing of the claim therefor to some general officer or the nearest station agent of the first party, or to the agent at destination, or some general officer of the delivering line, before such stock is removed from the point of shipment or from the place of destination, and before such stock is mingled with other stock, such written notification to be served within one day after the delivery of such stock at destination."

The above notice was not given before the live stock were removed from the place of destination, and was not given until about a month after the live stock reached Cordell. On this proposition the court instructed the jury as follows:

"You are further instructed that the special contract in this case contains the following language: * * * In this connection you are instructed that if you find from the evidence that the cattle in question, at the time they were unloaded, were then injured, or had been injured on the trip from Eddy to Cordell by the gross negligence of the railroad company, defendant, in transporting them, and that the plaintiff, Copeland, at the time had knowledge of such injuries, and with such knowledge unloaded said cattle and removed them from the place of destination with-

out giving the notice provided for in said special contract, the removal of said cattle without giving the notice required would be a bar to Copeland's right to recover damage from the defendant for defendant's negligence in transporting said cattle, but this would not apply if you find that, at the time said cattle were unloaded and removed by plaintiff, Copeland, he did not know of the damages done said cattle, and the damages were such as could not be ascertained by the exercise of reasonable care."

We think the foregoing instruction is as favorable to the defendant as could well be.

Paragraph 11, *supra,* of the contract cannot reasonably be construed to have reference to injuries which could not have been ascertained by the exercise of reasonable care. It would be a very harsh rule to hold that by its terms the shipper was bound to serve notice within one day after the delivery of stock, when he could not, by the exercise of reasonable care, discover the damage done until after the expiration of that time. In the case at bar the damage was not such as could be ascertained by an external examination. Overheating, according to Dr. Babcock, the veterinary who testified below, does not manifest itself, as a general rule, until about three days after the cause thereof. At the time of the removal the cattle were only gaunted and restless, which would be a natural condition in the face of such a journey. The plaintiff did not sue for the gaunting of such stock, but only for the loss occasioned by their death. At the time of the delivery none of the cattle had died, and none did die until about two days thereafter. If the rule contended for by counsel for the railway company was followed, and a strict construction given the limitation in paragraph 11, the plaintiff would be entirely deprived, through no fault of his of his right of recovery.

In the case of *Ormsby v. Union Pac. Ry. Co.* (C. C.) 4 Fed. 170, it was held that a contract between a railroad company and a shipper of horses stipulating that for injury to the animals shipped over the line of the road the owner should make a demand in writing of the agent of the company before removing them from the place of destination, or from the place of delivery, was not ap-

plicable where the injury was the illness of the animals, and the extent of such illness could not be known until their removal from the cars, and probably not for some little time after such removal.

In the case of *A., T. & S. F. Ry. Co. v. Morris,* 65 Kan. 532, 70 Pac. 651, a case similar to the one at bar, in discussing this proposition, Mr. Justice Greene says:

"The shipping contract in question, like any other contract, should be construed in the light of surrounding circumstances, and with a view to carry into effect the actual intention of the parties. It cannot be said that the company expected that the shipper would be compelled to notify it within three hours after the arrival of the cattle of any injuries which they had sustained which were not observable; nor can it be assumed that the shipper contemplated, when signing the contract, that he was bound to such unreasonable requirements. The plaintiff was bound by the conditions in the contract, and he could not recover for any injuries sustained by the cattle which were obvious when the cattle were turned over to him, or which a reasonably careful man similarly situated would have observed, until he had fully complied with the conditions of the contract by giving the stipulated notice. Whether the cattle sustained any injury by reason of the negligence of the company, its agents, or employes, or whether such injuries, if sustained, were discoverable by the defendant before removing them from the yards at Spivey, were questions of fact which the jury, upon conflicting evidence, found against the plaintiff in error. Such findings will not be examined, nor the evidence weighed by this court, when it appears that every material and essential fact necessary to sustain the findings is supported by some evidence, although it may be weak and conflicting."

We have considered all of the grounds of error urged by counsel for defendant, and have examined the proceeding had in the court below with considerable care. We believe that the case below was submitted to the jury upon instructions that stated the law with substantial accuracy. and that the verdict of the jury was amply supported by the evidence. We find no error that would justify this court in setting aside the judgment rendered thereon.

The judgment of the lower court is affirmed.

All the Justices concur.